IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A 2010 Acura ZDX, BEARING WV REGISTRATION 3YY434 REGISTERED TO BESSIE A TYSON | Case No. 1:20-mj-00001 |

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Benjamin Henrich, being first duly sworn on oath, depose and say:

I. INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the Department of Justice, Drug Enforcement Administration (DEA). As such, I am "an investigative or law enforcement officer of the United States," as defined within Section 2510(7) of Title 18, United States Code (USC), and empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21 of the United States Code. I have been employed as a Special Agent with DEA since October 2017. I am currently assigned to the Charleston District Office (CDO), Charleston, West Virginia, Tactical Diversion Squad (TDS), investigating narcotics trafficking, money laundering, and the diversion of licit pharmaceutical controlled substances and listed chemicals.

2. I received approximately seventeen (17) weeks of specialized training in Quantico, Virginia, pertaining to narcotics trafficking, money laundering, undercover operations, and electronic and physical surveillance procedures.

3. Prior to being a DEA Special Agent, I was a sworn law enforcement officer in the states of Wisconsin and Minnesota since 2003. In that capacity, I investigated many violations of Wisconsin and Minnesota State Laws, including the narcotics laws

of the State of Wisconsin and State of Minnesota. As a result, I have become familiar with methods of operation of drug traffickers and organizations. In Minnesota, I spent approximately 3 years as a DEA Task Force Officer assigned to the Minneapolis District Office and enforced Title 21 violations. As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the investigation of heroin, schedule II pharmaceutical pills, cocaine, methamphetamine, marijuana and other dangerous drug organizations.

4. I have participated in narcotics investigations at both the local and federal level, and I have participated in numerous federal search warrants, which resulted in the seizure of controlled substances and the successful prosecution of numerous defendants. As a result, I have become familiar with methods of operation of drug traffickers and organizations. As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the investigation of cocaine, methylenedioxymethamphetamine (MDMA), methamphetamine, heroin, marijuana and other dangerous drug organizations.

5. I have participated in the debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug smuggling, distribution, packaging, trafficking, avoiding law enforcement, and laundering proceeds, among other concerns related to drug trafficking. I have discussed and learned from other law enforcement investigators in regards to these matters as well.

6. Based on my training, experience and conversations with other experienced narcotics investigators, I have gained experience in the techniques and methods used by drug traffickers to distribute controlled substances, their use of cellular phones and other electronic communication devices to facilitate their trafficking activity, and the methods used to conceal and launder the proceeds of said activity.

7. Through my involvement as a case agent in numerous Title III investigations, I have gained experience from investigations involving the interception of wire communications. I have been directly involved in the review and deciphering of intercepted coded conversations between narcotics traffickers that were later corroborated by surveillance. Throughout my law enforcement career, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local narcotics officers about drug traffickers and their use of cell phones to facilitate drug trafficking by, for example, using code during their conversations. I have also received extensive instruction and practical training on intercepting communications and conducting coordinated surveillance while at the DEA Academy.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. Sections 841 (a)(1) and 846 have been committed, are being committed, and will be committed by James WALKER, and/or additional known and unknown persons. There is also probable cause to believe that search of the **Target Vehicle**, described in Attachment A will constitute evidence of these criminal violations, as described in Attachment B, and is likely to lead to additional evidence of drug trafficking activity.

9. The facts in this affidavit come from my personal observations, my training and experience, and information

obtained from other agents and witnesses. I have not included every fact concerning this investigation. This affidavit is intended to show merely that there is a sufficient factual basis for a fair determination of probable cause to support the Application.

## II. PURPOSE OF THIS AFFIDAVIT

10. This affidavit is submitted in support of an application for a search warrant, all with respect to the following target vehicle:

    a. **Target Vehicle**: A dark grey Acura ZDX bearing West Virginia license plate 3YY434 registered to Bessie A TYSON, PO Box 631, Bluefield, West Virginia with VIN#2HNYB1H45AH502424. The Target Vehicle was seized at 114 Azalea Street, Princeton, WV on January 10, 2020. That same day, investigators transported the Target Vehicle to the West Virginia State Police Detachment in Princeton, WV. The Target Vehicle is currently located at the West Virginia State Police Detachment in Princeton, West Virginia.

11. Authority is requested to apply not only to the above described target vehicle, but also to any other locked compartments that may be located within the above described target vehicle and may contain items as described in Attachment B.

12. This is the first application in this district for a search warrant for the above listed Target Vehicle.

### III. SOURCES OF INFORMATION

13. I have obtained the facts set forth in this Affidavit through personal participation in the investigation, from oral and written reports of other law enforcement officers, from

records, documents and other evidence obtained during this investigation, from confidential sources and sources of information who are associated with, and knowledgeable about, the subjects of this investigation and their confederates, and from other sources of information as referenced herein. I have reviewed official reports prepared by other law enforcement officers participating in this investigation and in the other related investigations by agencies referenced in this Affidavit.

14. When this Affidavit refers to vehicle ownership, either I or other agents involved in the investigation have reviewed the relevant state vehicle records from the West Virginia Department of Motor Vehicles ("DMV"), or the equivalent agency in other states. Similarly, when I refer to identification documents, either I or other agents involved in the investigation have reviewed the relevant driver license or similar records maintained by DMV or the equivalent agencies in other states. When I refer to the criminal history of a subject, either I or other agents involved in the investigation have reviewed the available criminal history from state or federal agencies.

15. During this investigation we have monitored and/or recorded conversations between Confidential Sources and targets of this investigation. These conversations have been conducted in English. When I refer to these conversations in this affidavit, I am relying on summary translations that have been provided to me by investigators who are familiar and have worked extensively on this investigation or I have myself listened to the recorded conversations.

16. On August 5, 2019, U.S. District Judge Irene C. Berger signed an order authorizing the interception of wire communications to/from James WALKER's phone, (929)264-3076 (TT1)

and the interception of wire communications to/from phone, (304)716-2086 used by both James WALKER and Keith Blakely (TT2).

### IV. PROBABLE CAUSE

17. This investigation began in August 2017, after investigators with Southern Regional Drug and Violent Crime Task Force (SRDVCTF) received information from various sources of information and other law enforcement agencies about an unidentified black male, known at that time as "X" as being a large supplier of pills. Investigators with the SRDVCTF later developed two confidential sources who were able to make multiple controlled purchases from James WALKER a.k.a. "X" and his associates.

18. During the investigation, two Confidential Sources were utilized to make controlled purchases of pills from the James WALKER Drug Trafficking Organization (D.T.O.) On each occasion, the CS would call a phone that would be answered by James WALKER and he would direct the CS to a location to purchase the pills. The CS would then meet a black male to conduct the transaction. The CS's stated that some of the names of the males that they met were "Bumpy", "Sife", "Zo", and "Little Fatty".

19. On August 5, 2019, U.S. District Judge Irene C. Berger signed an order authorizing the interception of wire communications to/from James WALKER's phone, (929)264-3076 (TT1) and the interception of wire communications to/from phone, (304)716-2086 used by both James WALKER and Keith BLAKELY (TT2). Interception began on August 7, 2019 and investigators quickly determined that TT2 was used to distribute pills to local re-distributors in the greater Mercer County area.

20. The paragraphs below will discuss the seizure of the above described **Target Vehicle**, which occurred on January 10, 2020. The **Target Vehicle** was seized after the arrest of James

WALKER at 114 Azalea Street, Princeton, West Virginia. It is believed that the **Target Vehicle** was used to transport Schedule II pills that were sold by the WALKER D.T.O. and to collect drug proceeds. These beliefs are supported by intercepted communications and coordinated surveillance. Additionally, a drug detection K-9 alerted to the presence of narcotics in the **Target Vehicle** before the vehicle was towed.

**A.   January 10, 2020: Target Vehicle Seized after arrest of James WALKER at 114 Azalea Street, Princeton, West Virginia.**

21.  In the paragraph below, I discuss the arrest of James WALKER and the seizure of the **Target Vehicle.** On December 17, 2019 evidence was presented to a Grand Jury sitting in the Southern District of West Virginia based on the investigation into the WALKER D.T.O.  A true bill was returned for James WALKER and a federal arrest warrant was issued on December 18, 2019.

22.  On January 10, 2020 investigators with Southern Regional Drug and Violent Crimes Task Force located the **Target Vehicle** parked outside 114 Azalea Street, Princeton, West Virginia. Throughout the investigation into the WALKER D.T.O., James WALKER was observed driving the **Target Vehicle,** and would transport other members of the WALKER D.T.O. to locations in the Princeton, West Virginia area to distribute Schedule II pills.

23.  Surveillance was established at 114 Azalea Street and investigators observed a female, who was identified as Michelle MITCHELL, who investigators knew that James WALKER and Michelle MITCHELL had a child in common, leave the residence in a different vehicle and then return. Investigators contacted members of the US Marshal's Task Force to assist in the apprehension of James WALKER due to a violent criminal history that included assaults.

24. Members of the US Marshal's Task Force approached the house and knocked and announced and then made entry into the residence. James WALKER was located inside the residence and was taken into custody without incident.

25. Michelle MITCHELL told investigators that James WALKER arrived at her house about 2 days prior and he had been driving the **Target Vehicle.** Car keys for the **Target Vehicle** were located in the bedroom on the nightstand next to bed that James WALKER was laying on. A large amount US Currency was found in James WALKER's pants pockets as well.

26. Investigators requested a drug detection K-9 to respond to the location. A drug detection K-9, "Ace", arrived at the location and conducted an exterior open air sniff of the vehicle. The K-9 handler stated that the K-9 had a positive indication for the odor of narcotics coming from the vehicle.

27. The **Target Vehicle** was then towed to the West Virginia State Police Detachment by Brownings Towing. Investigators followed the tow truck from 114 Azalea Street to the State Patrol Detachment.

### V. CONCLUSION

28. Based on the investigation to date, summarized above, investigators believe the above described **Target Vehicle** is likely to contain evidence of drug trafficking, as described in Attachment B, and other crimes committed by James WALKER and others.

### VI. AUTHORIZATION REQUEST

34. Based on the foregoing, I request that the Court issue

the proposed search warrant.

_____
Benjamin S. Henrich
Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN before me this ____ day of January, 2020.

_____
HONORABLE Omar J. Aboulhosn
United States Magistrate Judge

## ATTACHEMNT A

### Property to be searched

Target Vehicle: A dark grey Acura ZDX bearing West Virginia license plate 3YY434 registered to Bessie A TYSON, PO Box 631, West Virginia with VIN#2HNYB1H45AH502424. The Target Vehicle was seized in Princeton, Mercer County, WV on January 10, 2020. That same day, investigators transported the Target Vehicle to the West Virginia State Patrol Princeton (West Virginia). The Target Vehicle is currently located at the West Virginia State Patrol Princeton Detachment.





## ATTACHMENT B

### Particular Things to be Seized

1. Log books, notes, records, customer lists, ledgers, and other papers and property relating to the transportation, ordering, purchasing, processing, storage, and distribution of controlled substances, including but not limited to heroin, methamphetamine and prescription pills.

2. Receipts and other items related to money wire transfers and evidence of the transfer or concealment of money.

3. Cellular telephones and electronic devices believed to be used to facilitate drug trafficking.

4. United States currency and other financial instruments

5. Photographs of assets, narcotics, or co-conspirators.

6. The opening, search and removal, if necessary, of any safes or any locked receptacle or compartment, as items described in this attachment could be maintained within.

7. Any papers or items indicating occupancy, residency, or rental.

8. Drug paraphernalia and equipment, related to the sale, manufacture, processing and storage of controlled substances, including but not limited to scales, cutting agents, and packaging materials.

9. All firearms and ammunition.

10. Controlled substances including but not limited to heroin, fentanyl, cocaine, and pharmaceuticals.